A. F. McDOUGALD v. WM. COWARD.

*Evidence—Damages—Slander.*

1. In an action for damages for making slanderous charges against the plaintiff, evidence is competent, in mitigation of damages, to show the mental distress of the defendant at the time the words were spoken, caused as he believed, by the act of the ~~defendant.~~

2. Objections to evidence are to the answer and not to the question, and where the answer is not calculated to prejudice the objecting party, it becomes immaterial.

3. The Court can receive evidence, although not strictly proper when offered, when counsel undertake to make it relevant by evidence to be thereafter introduced.

4. In an action of slander in charging a female with incontinence, the defendant offered evidence to show his mental condition when the slanderous words were spoken, caused by his belief that the plaintiff had enticed his son, with whom he charged that she had had connexion, to leave his home and go off with her, and *It was held,* that such evidence was admissible to rebut malice, and in mitigation of damages.

5. Where, in such action, the plaintiff, as a witness in her own behalf, testifies that she is of untarnished virtue, evidence is admissible that she has allowed men to take liberties with her, not reaching to sexual intercourse, although such acts are not charged in the pleadings. Such evidence is irrelevant if originally offered, but is competent to contradict.

(*Bost* v. *Bost*, 87 N. C., 477 ; *Perry* v. *Jackson*, 88 N. C., 103 ; cited and approved.)

McDOUGALD *v.* COWARD.

CIVIL ACTION, tried before *Philips, Judge,* and a jury, at Spring Term, 1886, of GREENE Superior Court.

The plaintiff's action, begun on July 6th, 1885, is prosecuted for the recovery of damages, for the utterance, by the defendant, of defamatory words concerning the plaintiff, on several different occasions, imputing a want of virtue, and charging acts of illicit sexual intercourse with divers persons, and among them the defendant's son. The speaking of the words, substantially as set out in the complaint, is not denied by the defendant, and he admits he meant to charge incontinency. Some of the charges he justifies as true, and disclaiming any malicious purpose, he sets out the mitigating circumstances under which the words were spoken.

The plaintiff avers her innocence.

The defendant alleges, that one of his conversations set out in the complaint, was a confidential and privileged communication, made under a sense of moral duty to the brother of certain unmarried young ladies, relatives of the defendant, for their safety and good name.

The parties disagreeing as to the issues raised by the pleadings, the Court prepared and submitted to the jury, issues, which with the responses to each, are as follows:

I. Did the defendant, in speaking of the plaintiff, use the words set out in the second article of the complaint, thereby make a charge of incontinency against her? Answer, by consent: Yes.

II. Did the plaintiff have illicit sexual intercourse with Mike Coward? Answer: Yes.

III. Did the plaintiff have illicit sexual intercourse with John Coward? Answer: Yes.

IV. Did the plaintiff have illicit sexual intercourse with Dempsy Wood? Answer: Yes.

V. Did the defendant, in speaking the words to Luby Harper, as stated in the second article of the complaint,

intend to charge sexual intercourse with the person there mentioned? Answer, by consent: Yes.

VI. Were the words true? Answer, by consent: No.

VII. Did the defendant, in uttering the language set out in the complaint, to Grimsley, intend to charge plaintiff with unlawful intercourse with William Coward? Answer, by consent: Yes.

VIII. Were these words true? Answer, by consent: No.

IX. Was the communication made to Grimsley privileged? Answer: Yes.

X. What damage is the plaintiff entitled to? Answer: Five cents.

The plaintiff moved for a new trial, which was refused, and judgment being rendered that she recover the sum awarded by the jury for damages, and the same sum in costs, she appealed to this Court.

The facts stated in the case on appeal, which cannot be much abridged without producing obscurity in regard to the rulings upon the evidence brought up for consideration, are these:

After two of the plaintiff's witnesses, who had been previously examined, had testified on cross-examination, without objection, that the defendant was much distressed in mind about the absence of his son John, the plaintiff introduced one John Patrick, who testified in substance, that on Saturday, the 20th of June, 1885, the defendant said to witness, that his boy John was gone again, and asked the witness if he had heard from him. The defendant said that it was the first boy he had ever known to be seduced, and that the plaintiff had seduced him. He further said that the plaintiff had gone to Black Mountain, and he had gone to Goldsboro to see if his son John had not followed her off, and that he went to Goldsboro to look for his son the day that plaintiff left for Black Mountain.

The defendant also stated that his son Mike had had something to do with the plaintiff in Snow Hill, but that he knew nothing of his own knowledge of the plaintiff's improper connection with his said sons, and that when the plaintiff went to his house, he did not think there would be any trouble between her and his son John, and that his older boys were not at home. The witness then asked the defendant why he did not get his son Heber, a grown young man, to help attend to her, and defendant replied, that he "reckoned Heber had all he wanted of it, and was disgusted at it." Defendant asked witness, if he, the witness, heard from his son John, to let him know it, and if, further, he had heard the report about the plaintiff and his son John, and the witness replied he had heard some reports about John, and William Ormand.

This conversation was on Saturday, after the defendant came back from Goldsboro.

On cross-examination by the defendant, this witness testified, that no one was present and heard the conversation between himself and the defendant. Witness testified further, that defendant, in said conversation, said he watched around the train going West, on which the plaintiff was at Goldsboro, and his son Mike went in the train to see if his son John was there; that he had known the defendant thirty years; had seen him often and knew him well.

The defendant asked the witness the following question: "What was the mental condition of the defendant at the time of said conversation?" Question objected to by plaintiff, and the defendant's attorney stated that it was asked to show the mental excitement of defendant at the time of the conversation, and not to show insanity; the plaintiff having shown a conversation, not set up in the complaint, to increase damages, the defendant asked this question in mitigation, and the Court overruled the objection, and the plaintiff excepted. Thereupon the witness answered, that defendant's

mind was as good as at any other time, and that his manner was uneasy about his boy John being gone.

In support of the admissibility of the evidence thus admitted, the defendant's counsel promised the Court to give, and afterwards gave, evidence tending to show that the plaintiff had taught school in a school house within a short distance of defendant's dwelling; that his son John, aged about fourteen years, had been a pupil of the plaintiff in said school; that plaintiff had boarded at the house of the defendant; that defendant, believing that plaintiff had had sexual intercourse with his son John while he was her pupil, had about four weeks before discharged her as such teacher, and she had left his house; that soon thereafter, his said son had left his house on account of the said plaintiff, as the defendant believes, and had been absent about a month, and was then absent; that neither the defendant nor any of his family knew where John was, and supposed he had committed suicide; that defendant had searched extensively for him, and had been unable to find him, and that defendant and his wife were much distressed on account of John's absence.

There was also evidence on part of plaintiff, tending to show that defendant had not discharged the plaintiff for the cause above set forth.

The plaintiff was introduced as a witness in her own behalf, and testified, among other things, that no one had ever had sexual intercourse with her. On cross-examination, she said that she knew slightly Robert Taylor; that Taylor carried her in a buggy nine or ten miles to Snow Hill and returned with her at night, and "that he did not kiss her on that trip;" he did not kiss her "time and again on that trip," and did not "put his arm around her time and again on that trip."

The plaintiff was asked if Thomas Harvey had ever kissed her, and she replied he never had. She was asked if he ever felt of her leg, and this she denied.

Evidence was offered by defendant, and admitted by the Court, tending to show that between January and June, 1885, Mike and John Coward had had illicit intercourse with the plaintiff; and that on July 20th, 1883, Dempsy Wood had had illicit intercourse with her.

Defendant introduced Thomas Harvey as a witness, who testified that he was not related to the plaintiff, and was not engaged to be married to her. He was then asked the following question : " What liberties have you ever taken with the plaintiff, if any ?" Objected to by plaintiff, and the defendant's counsel stated that the question was asked to contradict the plaintiff. Objection overruled, and plaintiff excepted. The witness answered that he had kissed her five or six times, and had hugged her five or six times, and put his arms around her when no one else was present, that he had pinched her thigh once or twice at church one night, when they were sitting on a back seat, and that he went with her to church that night and returned to her home with her after church was out.

The said Robert Taylor was introduced by the defendant, and was asked, "What liberties have you ever taken with the plaintiff, if any?" Objection by plaintiff; objection overruled, and plaintiff excepted. The witness testified, that not being related to plaintiff, and not being engaged to be married to her, he took her to ride some ten or twelve miles to Snow Hill, and returned with her at night; that on the ride that night in a buggy together and alone, he had his arms around her and kissed her; had no idea how many times he had put his arms around her and kissed her.

It was admitted that plaintiff had never been married, and that Alice Grimsley was the youngest child of W. P. Grimsley and his wife Mary C. Grimsley, and that Alice was, at the time of the trial, about six years of age. It was also admitted that Mary C. Grimsley was the mother of the plaintiff.

The Court delivered, in writing, the following charge:

A general charge of incontinency is made in the second allegation of the complaint, and the issue thereon is submitted marked 1. By consent of counsel, it is agreed that the response thereto shall be "Yes."

The law infers malice, as a presumption of fact from the proof of the falsity of defamatory words, uttered without privilege. Defendant pleads justification; that is, the charges made by him were true. Truth is a complete bar. The justification must establish the substance of the truth justified. Specific offences of the kind charged in the second allegation of the complaint, are offered in evidence in justification, and it is for the jury to say, whether plaintiff did have actual illicit sexual intercourse with Mike Coward, John Coward and Dempsy Wood, or either of them, from the evidence adduced. The burden to show these facts is on the defendant. The jury in civil cases decide according to the preponderance of evidence.

The defendant further pleads facts and circumstances which induced him to suppose the charges set out in the second, third and fourth allegations of plaintiff's complaint to be true, when he made them, and offers testimony before you to prove them in mitigation of damages. The jury may, if they please, give exemplary damages; that is, damages given by way of punishment and example for the public good, and they are allowed, as calculated to prevent moral wrong, violence, outrage and oppression, and to preserve public tranquility. It is proper for the jury to consider all the facts and circumstances immediately connected with the transaction, tending to exhibit or explain the motive of defendant, and if satisfied the defendant spoke the words concerning the plaintiff, as alleged, in the *bona fide* belief that they were true, and under such circumstances as would incline a reasonable person so to believe, the jury can consider that in mitigation of any damages they may give in their verdict, but this could not justify or exonerate from the consequences of the false accusation.

McDougald v. Coward.

Specific charges of slanderous words are set out in the third and fourth articles of plaintiff's complaint, and issues number five and seven are submitted; and by consent of counsel, it is agreed that the response may be "yes" to each of these issues. It is also agreed, by consent, that the jury may respond "no" to issues number six and eight.

The specific acts as alleged in these sections, are admitted to be true, and the words spoken are likewise admitted not to be true. But the defendant says that his relations to John D. Grimsley, and the circumstances of the communication set out in allegation four of the complaint, made the same privileged, and that the jury ought to find the ninth issue in the affirmative.

If the words so spoken to John D. Grimsley on the 13th of June, were made in good faith, and with no actual wrongful motive, and under a moral duty to warn him for the benefit of his sisters, it would be a privileged communication.

Where the communication, if made in good faith, is privileged, the burden is on the plaintiff to show express malice; that is, actual wrongful motive. But it is not necessary to prove it by extrinsic facts. It may be inferred from the facts and circumstances attending the communication, the manner in which it was made, and whether the defendant repeated substantially the same charge to other persons at any other time before suit brought. The Court charges you, that upon the responses to issues number five and six, made by consent, the plaintiff is entitled to a verdict for some damages; and the jury will say what damages the plaintiff is entitled to in response to the tenth issue, even if you should find the issues two, three, four and nine in the affirmative.

The jury rendered a verdict assessing the plaintiff's damages at five cents. Motion for new trial overruled. Judgment. Appeal by plaintiff.

*Messrs. W. R. Allen* and *Monroe,* for the plaintiff.

*Mr. John Devereux, Jr.* (*Messrs. Geo. V. Strong* and *Jos. B. Batchelor* were with him), for the defendant.

Smith, C. J., (after stating the facts). We are now prepared to enter upon an examination of the plaintiff's exceptions, and they have reference to the rulings upon the admissibility of evidence.

I. The defendant asked of one John Patrick, a witness introduced by the plaintiff, and examined as to a conversation with the defendant, in which the latter made charges of her improper relations with his son John, the following question: "What was the mental condition of the defendant at the time of that conversation?" stating, on the plaintiff's objection to its being answered, that it was not asked to show insanity, but the mental excitement under which the defendant was then laboring. The objection was overruled, and the witness answered, that his mind was as good as at any other time, and that he seemed uneasy about the absence of his son.

Two of the plaintiff's witnesses, on cross-examination, had before testified to the defendant's mental distress about John, and this without objection. This testimony was offered and received in mitigation of damages, and to repel the charge that the slanderous remarks were the promptings of a causeless malice, and we do not see why it was not competent for such purpose. As actual malice shown, would authorize an enlargement of damages, we think the defendant's distress about his son's absence, caused, as he believed, by their unlawful relations and her presumed influence over one so young, was competent to be shown in reduction of damages.

Besides, the response elicited no fact calculated to prejudice the plaintiff's case, and the objection, when well taken, is directed not to the question, but to the evidence drawn out in response. *Bost* v. *Bost,* 87 N. C., 477 ; *Perry* v. *Jackson,* 88 N. C., 103.

Moreover, testimony was received under a promise of counsel thereafter to lay a basis for its admissibility, by showing the facts which gave rise to the defendant's anxiety and trouble, and this was done, as shown in the case.

II. The plaintiff, examined on her own behalf, swore that no one had ever had sexual intercourse with her, as she had, in her verified complaint, before averred her chastity. She was then, on cross-examination, interrogated in reference to her permitting indecent liberties to be taken with her person, by certain named individuals, which she denied. These persons were then called by defendant and permitted to prove the lewd conduct, after objection, as shown in the case. This testimony, while irrelevant if originally offered, as being out of the sphere of the controversy made in the pleadings, is rendered competent by the plaintiff's own testimony to her own untarnished virtue, and as tending to show the contrary, for where a woman thus surrenders her person to such liberties taken by men, the transition to personal prostitution is easy, and the space between them not wide.

There was no exception to the charge, and these being the only errors assigned, the judgment must be affirmed, and it is so ordered.

No error.                                               Affirmed.