F. R. KNOTT v. H. H. BURWELL, JR.

*Appeal—Counter-claim—Libel—Evidence—Mitigation of Damages.*

1. Where a demurrer to a counter-claim is sustained and the counter-claim stricken out, the defendant cannot appeal from the judgment and so stop the trial of the action, but must note his exception to the action of the Court and bring the point up for review on an appeal from the final judgment.

2. In action to recover damages for a libel, it is competent for the defendant to introduce evidence in mitigation of damages, to show the provocation which induced him to publish the libel, but this provocation must originate in the same subject matter out of which the libel arose, or be closely connected with it.

3. In actions for defamation under the former system of pleading, evidence offered to sustain a plea of the general issue could not be considered in mitigation of damages, but this has been changed by *The Code*, §266.

4. Malice is presumed from the utterance of false defamatory words, and proof of it, other than proof of the utterance of the false and defamatory words, is not necessary, and hence it is always proper to allow the defendant to prove an absence of malice in order to mitigate the damages.

5. So where the plaintiff had charged the defendant with using false weights in his business, and upon hearing of the charge, the defendant sent to the plaintiff and asked him to correct it, which the plaintiff promised to do, admitting at the time that the charge was false, but he afterwards refused to retract it, upon which refusal the defendant published the libel sued on; *It was held*, that these facts were admissible in evidence in mitigation of damages.

(*Nelson* v. *Evans*, 1 Dev., 9; cited and approved; *Smith* v. *Smith*, 8 Ired., 29; cited).

CIVIL ACTION, tried before *Gilmer, Judge,* and a jury, at November Term, 1885, of GRANVILLE Superior Court.

There was a judgment on the verdict for the plaintiff, and the defendant appealed.

The facts fully appear in the opinion.

*Messrs. R. W. Winston* and *E. C. Smith,* for the plaintiff.
*Mr. D. G. Fowle,* for the defendant.

SMITH, C. J.   The action is for libel, and the complaint in
separate counts, sets out the alleged libelous matter, pub-
lished in a newspaper, known as *The Gold Leaf,* in its re-
spective issues of February 21st and March 6th, 1884.   The
answer denies the identity of the matter contained in the
newspaper with that set out in the complaint, and the im-
puted motive, and proceeds to explain the circumstances
that preceded and led to the publication as a means of self-
vindication, and to details other matters in explanation and
excuse of the act.   It also sets up a counter-claim for dam-
ages, on account of slanderous utterances of the plaintiff
against the defendant, in connection with the personal dif-
ferences which had sprung up between them in business
operations, and to which those imputed to the defendant
have reference.   To the counter-claim the plaintiff inter-
poses a demurrer, based upon the ground that it contains a
distinct and independent cause of action in tort, unwar-
ranted by *The Code,* §244, par. 1, and this being sustained
by the Court and the counter-claim disallowed, the defendant
appealed, and at the same time moved the Court to suspend
further proceedings in the action, until the appeal could be
heard and decided.   This was also refused and the trial
ordered to go on.   To these rulings the defendant's first ex-
ception is taken, and it is in our opinion without support in
law.   The proposed appeal was premature, and the excep-
tion being noted upon the record, the ruling would come up
for review after the final hearing upon an appeal then taken,
and this opportunity is now afforded the defendant.

We pass over so much of the controversy as relates to the
form of the issues, all of which are found adversely to the

18

defendant, to consider the exceptions to the refusal of the Court to admit evidence offered in mitigation of damages under the last issue, since this, in our opinion, entitles the defendant to a new trial.

To the proper understanding of the pertinence and force of the excluded proofs, it is necessary to set out the libelous publications as stated in the complaint, which are as follows:

" To THE PUBLIC.—On the 13th inst., Mr. J. W. Brown sold with us thirteen lots of tobacco. With the price of five of these lots he was satisfied. The other six lots he took in, and carried to Oxford, where, on the 14th inst., in the warehouse of F. R. Knott & Co., the same tobacco was made to weigh, or reported as weighing, sixty-four pounds more than it weighed at our house. It has now come to my knowledge that Mr. F. R. Knott, since the above mentioned occurrence, has been busying himself trying to slander our business, and our personal integrity, charging us with false weights, and giving the above as witness at once of our false dealing, and his own superior honesty. As soon as I heard of the matter, I sent my partner and brother, Mr. J. S. Burwell, to him, to call his attention to the injury and injustice done us, and to ask for such reparation as we were entitled to. Thereupon, in his (Mr J. S. Burwell's) presence, he agreed to sign a written statement, in which he acknowledged the wrong, and took the blame on his own warehouse, alleging in excuse, that from some unknown cause his scales or trucks were out of order on the 14th, which was not detected by him till after the sale. Having said all that, and allowed it to be written, he then refused to sign it, or to do anything else, and so this falsehood and slander still circulate on his authority. On such authority I can hardly think that any respectable man's character or business can be injured. It is the first time that our weights have been questioned, and I here pronounce the charge knowingly, intentionally and corruptly false. Our

scales are correct, and we render true weights. The false weighing was done in Messrs. Knott & Co.'s warehouse, and done for the purpose of dishonestly and knowingly injuring our warehouse and benefiting himself thereby.

Now, as to Mr. F. R. Knott. By his course since that occasion, he has shown himself insensible to the obligation of truth or honor, and unworthy of notice from any gentleman. I refer by permission to Messrs. John Meadows and I. N. Burwell, as to the incorrectness of his weights of tobacco bought by them on the same day. The gentlemen say that their tobacco was made to weigh about eight pounds to the pile too much on that day, which accounts for the gain of sixty-four pounds in the eight lots sold by Mr. Brown. I have further to say, that this same F. R. Knott has been charged to his face in the city of Richmond with stealing, without resenting the same. We know that we have to make our living by fair dealing and hard work, and have no fear that an honest man will question the one or envy the results of the other. We give true weights, realize the highest prices current, and pay cash for all we sell. And so, conscious of our integrity, we are, and I, H. H. Burwell, Jr., in particular, am at all times to be found at the Carolina Warehouse, in Henderson, ready to see and satisfy all who come, and to give our friends, the farmers, a cordial welcome, and the best the tobacco market affords.

H. H. BURWELL, JR.,

*Of Burwell Bros. & Co., Carolina Warehouse, Henderson, N. C.*
February 20th, 1884."

And for a second cause of action, plaintiff complains and alleges:

1. That on the 6th day of March, A. D. 1884, the said defendant, still further contriving and wickedly and maliciously intending to injure the plaintiff as aforesaid, and to

bring him into public scandal, infamy and disgrace, and to cause it to be suspected and believed that the plaintiff had been guilty of the crime of larceny, falsely, wickedly and maliciously, did print and publish, and cause and procure to be printed and published, in *The Gold Leaf*, a newspaper printed and published in the town of Henderson, as aforesaid, of and concerning the plaintiff, a certain other false, malicious, scandalous and defamatory libel, in one part of which said libel is contained the malicious, scandalous, defamatory and libelous matter following, that is to say:

"5th and lastly, that said Knott (meaning the plaintiff) had been charged to his face in the city of Richmond, with stealing, and did not resent it," meaning and intending thereby to charge the plaintiff with the crime of larceny, and in another part of said libel is contained the false, scandalous, malicious, defamatory and libelous matter following, that is to say: 'Not wishing to wrong a public at whose hands I (meaning the defendant,) have received so much confidence and support, by too venomous an article, and being unwilling to descend to a low mode of warfare, I (meaning the defendant,) simply offer the following certificate from parties above suspicion, leaving it to a fair and impartial public to judge whether my card (meaning the card of defendant as published in the said *Gold Leaf* of February 20th, 1884, and set out in full in the first cause of action of this complaint,) was justifiable, and whether or not my charges against said F. R. Knott are not more than justified, (meaning thereby the charge of larceny as set forth in said first card of date 20th February, 1884, and meaning and intending thereby to charge the plaintiff with the crime of larceny,) and if I (meaning defendant,) may be pardoned for thus trespassing upon the patience of my friends and the public, I wash my hands of Mr. F. R. Knott.'"

The defendant proposed to show, that four days before the date of the first publication, having received information that he had been charged with falsely under-weighing certain tobacco of one Brown by the plaintiff, the defendant sent his brother to Oxford to see the plaintiff, and to inquire of him if he was not in error in his statement as to the weight of Brown's tobacco, and to get his certificate to that effect; that his brother did visit Oxford. and returned the next day, reporting to defendant that it was a current rumor in Oxford that Knott had charged defendant with false weighing, and he had caught defendant at it; that plaintiff said the mistake was his own in regard to the weight, and he would fix it all right by signing a card to that effect next morning.

A card was prepared and presented to plaintiff as follows:

"To THE PUBLIC.—It has been currently reported to the detriment of Burwell Bros. & Co., proprietors of The Carolina Warehouse, of Henderson, that a load of tobacco belonging to J. W. Brown, Esq., was sold in their warehouse on the 12th inst., and was taken in and brought to Oxford and sold on our warehouse floor on 14th February, and that the tobacco gained sixty-four pounds in weight. The day the tobacco was sold in our house, our scales or trucks were out of order, from some unknown cause, which was not detected by us until after the sale, and we feel that we would be doing Messrs. Burwell Brothers great injustice were we not to make the facts known to the public."

That the plaintiff Knott refused to sign said card, and would do nothing further.

The rulings of the Court in refusing the proffered evidence, deprive the defendant of the means of showing the provocation given by the plaintiff for the *retaliatory* and vindicating utterance of the words penned, in the form of

an appeal to the public, and deny him the opportunity of showing the facts of the plaintiff's own misconduct, which are set out in the cards. This leaves him with no shadow of excuse for what he uttered in a moment of irritation, and smarting under a sense of injury, and places him under the imputation of being influenced solely by a feeling of malignity toward the plaintiff, and a revengeful spirit excited by no just cause.

It cannot be that the same punitory consequences are to be measured out in the one case as in the other, nor is such the law. It is true, under former technical rules of pleading applicable to actions for defamation, it was held that the general issue did not let in evidence offered to sustain it, to be considered in mitigating damages, as is decided in *Smith* v. *Smith*, 8 Ired., 29; but this has been superseded by the more equitable provision found in *The Code*, §266, which allows in the answer "both the truth of the matter charged as defamatory, and any mitigating circumstances to reduce the amount of the damages," and whether the defendant "prove the justification or not, he may give in evidence the mitigating circumstances."

As malice is involved in the utterance of false defamatory words, and separate proof of it is not essential to the maintenance of the action, it is a material element in aggravating damages, and especially so whenever the jury are at liberty to make them exemplary; it is but reasonable to allow the defendant to disprove its presence, and lessen its intensity in reducing the damages. "Even in States where the truth of the words is not permitted in mitigation under the general issue, yet proof tending to show that the plaintiff might be guilty of such acts as are charged, may be given to disprove malice and thus reduce the damages; as that prior to the speaking of the words, a common report or suspicion existed that the plaintiff had committed the act charged," with numerous references in the foot note, found on page 711 of Folkhard's

Starkie on Slander and Libel, from the note which is inserted by the editor, Woods, the extract is taken.

Among the cases cited is that of *Nelson* v. *Evans*, 1 Dev., 9, where it is said, a prevalent general report of the truth of the words spoken may be proved in mitigation, but not in justification.

" In cases of libel," we quote from Wood's Mayne on Damages, §122, " the defendant may give any evidence in reduction of damages which goes to prove the absence of malice, or he may show previous provocation received from the plaintiff." This provocation ought to originate in the same subject matter, or be closely connected with it, out of which the defendant's slander arose. *May* v. *Brown*, 3 B. & C., 113; 10 E. C. L. Rep., 24.

Now, to apply the rule to the facts of the present case: The defendant, in a forbearing spirit, on hearing that a serious charge had been made against him for false weighing, sends his brother to the plaintiff to ascertain from him if he was not in error in his statement about the defendant's short weighing, and to obtain from him a written correction. The interview takes place; the current report, so prejudicial to the defendant, is communicated to the plaintiff, who says it was a mistake of his, and that he would in the morning sign a card to that effect. It was prepared by the editor of another newspaper, and when being presented to the plaintiff he peremptorily refuses to put his name thereto, nor does he suggest any modification in its form, which would be acceptable. This, when repeated to the defendant, was followed very soon by the alleged libel. Ought not these facts to have been heard by the jury; and if accepted as true, ought they not to have been considered in determining the punishment to be suffered by the defendant in giving expression to his resentment in the form adopted? Was it to be expected that he could rest silent under so injurious a charge, and repress all resentment at the plaintiff's refusal of any

correction? Was it without any palliating circumstances that in repelling the charge, he struck back at his assailant?

Certainly one feeling himself so wronged, and with correction refused by the wrong-doer, does not stand in the same light as one who so acts with no provocation and from sheer malignity, and yet the exclusion of the evidence leaves him equally defenceless before the jury as would be the other.

So too, we think, the statement in the depositions, with the information possessed by the defendant, should have been heard by the jury in mitigation, because the evidence shows that the charge about the "nested tobacco" was not a mere fabrication of the defendant, and hence the damages should not be so great as if it was the unsupported creation of the defendant's own brain, and conceived and brought out from a malicious and wicked heart.

For these reasons the verdict must be set aside, and a *venire de novo* awarded in the Superior Court.

Error.                                      Reversed.