## STATE v. A. N. HINSON.

*Slander of Women, under § 1113 of The Code—Evidence, when Admissible—Ex-parte Testimony.*

1. In an indictment for slandering an innocent woman, under § 1113 of *The Code*, the defendant cannot show, on the plea of not guilty, a prevalent report of sexual intimacy between the prosecutrix and one C., the making of a charge of such intimacy being the defamatory matter specified in the indictment, to disprove its wanton and malicious utterance, though he might make such proof, after verdict of guilty, to the Court, in extenuation, &c.

2. On such trial, it appearing on cross-examination of the prosecutrix that, the morning after the alleged criminal intercourse with C., she had, before hearing the report from her aunt, written to C. and sent the letter to him ten miles away by a messenger, a further question by the defendant, whether her aunt told her from whom she got the report, *Held*, inadmissible, in the absence of a suggestion as to the purpose for which the inquiry was made.

3. Whether a witness is qualified to testify as an expert, is a question for the Court, and not reviewable; and the value of his testimony as such is for the jury to determine. Therefore, when a physician, upon evidence of his study and practice of his profession, was admitted as an expert to testify, as the result of his examination of the sexual organs of a woman, that she had never copulated with a man, an objection to the testimony, based upon the witness' inexperience as to the effect of such intercourse upon the organs of the female, could not be sustained.

4. A woman who has never had actual sexual intercourse with anyone is an *innocent woman,* within the meaning of § 1113 of *The Code,* even though she and a man were surprised in each other's embrace, about to commit the act of copulation, but before it took place.

INDICTMENT for slander of an *innocent woman*, tried before *Meares, J.*, at October Term, 1888, of the Criminal Court of MECKLENBURG.

The facts appear in the opinion.

*The Attorney General*, for the State.
*Mr. C. W. Tillett*, for the defendant.

SMITH, C. J.    The defendant is charged in the indictment with the false, wanton and malicious utterance of slanderous words, as therein set out, of and concerning one Emma Harrison,. an innocent woman, imputing incontinency and a want of chastity, in violation of the statute (*The Code*, sec. 1113).

The statute declares that if any person shall attempt, in a wanton and malicious manner, to destroy the reputation of an innocent woman, by words, written or spoken, which amount to a charge of incontinency, every person so offending shall be guilty of a misdemeanor, and fined or imprisoned at the discretion of the Court.    Upon his arraignment the defendant entered the plea of not guilty, on the trial of which, before the jury, he was convicted.

There were two exceptions taken during the examination of witnesses to the ruling out of evidence offered, and one to evidence admitted for the State, and errors are assigned in the refusal of the Court to give to the jury certain instructions asked, and to the giving of others in their places. These will be considered in their proper order on the record.

1. The defendant proposed, and was not allowed, to show a prevalent report of sexual intimacy between one Christenberry and the *feme* prosecutrix, the making of which charge is the defamatory matter specified in the indictment, in disproof of their wanton and malicious utterance.

The cases cited in the brief of defendant's counsel and found in our own reports, to-wit, *Nelson v. Evans*, 1 Dev., 9,

decided in 1826; *McCurry* v. *McCurry*, 82 N. C., 296, decided in 1880; *Sowers* v. *Sowers*, 87 N. C., 303, decided in 1882; *McDougald* v. *Coward*, 95 N. C., 368, decided in 1886; and *Knott* v. *Burwell*, 96 N. C., 272, decided in 1887, were all civil actions instituted to recover damages, and proof of general reports of the truth of the charge imputed to the defendant was received in mitigation of the damages and in extenuation of the defendant's conduct in repeating what was generally current and perhaps believed, and so would be received such evidence in a criminal prosecution after verdict, by the Court, in ascertaining the punishment merited. But it is not competent to disprove the presence of that malice implied in the utterance of a calumnious and unfounded charge, ruinous to the character of the sex, and unwarranted by any moral duty or as a privileged communication; still less can it be heard to sustain the defamatory words, the truth thereof, and not a general belief in their truth, being necessary to be shown as a defence to the action. *Hampton* v. *Wilson*, 4 Dev., 468.

When a slanderous charge is made, the law, *prima facie*, implies malice from the publication, unless in the case of a privileged communication, which appears when the party is acting under a legal or moral duty towards the person to whom it is made, and in such cases malice must be proved. *Adcock* v. *Marsh*, 8 Ired., 360. No such duty existed here, for, as the testimony shows, the defendant said, at a public place, in the hearing of eight or ten persons, just after the said Emma left, that " his (the defendant's) daughter had caught Andrew Christenberry and Emma Harrison in the act of adultery, and that the strumpet ought to be drummed out of the county." There is, consequently, no excusable element in the occasion on which the words were spoken, imparting a privileged character to their utterance, and current rumor could have no effect in rebutting the implied malice; and its existence, not its degree, was only an inquiry before the jury, in passing upon the issue of guilt.

2. In the course of the cross-examination of the prosecutrix, she stated that the next morning after the alleged criminal intercourse with Christenberry, and before hearing the report, she wrote a letter to Christenberry, and sent it to him ten miles distant by a messenger; that she heard of the report from her aunt. Whereupon, defendant's counsel asked if her aunt told her from whom she got the report. The question, on objection, was disallowed.

We are unable to see the pertinency of the inquiry, or any proper use that could be made of the answer. It was wholly immaterial how or from whom the information came. There is no suggestion of any way in which it could have been made available to the defence, nor of the purpose for which it was sought. This was at least due to the Court, if any complaint is to be made of the refusal to permit the question to be answered.

3. The appellant assigns error in receiving the testimony of a physician who examined the private parts of the prosecutrix, and was allowed to give the results, with the opinion, formed upon the results, that she had never had sexual intercourse with a man. The objection is based upon the witness' previous inexperience as to the effects of such communication upon the sexual organs of the female. The answer to this exception is, that there was evidence from study and practice of his professional knowledge upon the subject of his testimony, and its value is dependent upon the extent of that experience, to be judged by the jury.

In *Flynt* v. *Bodenhamer*, 80 N. C., 205, it is said, and approved in *Branton* v. *O'Briant*, 93 N. C., 99, and repeated in *State* v. *Cole*, 94 N. C., 958, that "the Court must decide whether he has had the necessary experience to enable him to testify as an expert. But the value of his opinion, when admissible, must be determined by the jury alone, and it depends upon the opportunities he has had for acquiring skill and knowledge, and the use he has made of those opportunities."

The Court determines the preliminary fact that the witness is or is not an expert, and when there is any evidence of it, the finding, like that of the jury, is not reviewable in this Court. *State* v. *Davis,* 63 N. C., 578, and other intermediate cases, down to *Smith* v. *Kron,* 96 N. C., 392.

4: The remaining assignment of error is in the refusal to give this asked instruction to the jury: "If the prosecutrix had surrendered her person to Christenberry for the purpose of committing fornication with him, she would not be an *innocent woman,* though the act was not completed, in consequence of the coming upon them of the parties." Instead of so charging, the Court told the jury " that the woman was innocent unless she had had sexual intercourse with a man."

There was testimony tending to show that the parties were surprised, while in the very act of copulation, and prevented from consummating it. As we understand, the parties were in each other's embrace, about to commit the act, and were interrupted, so that it did not take place. It is true, the moral degradation from such a surrender of the person is little, if any, less than would have resulted from actual coition; but it is necessary to draw the line somewhere, the overstepping of which destroys the status of innocency, in the sense of the statute, and short of which it is not lost, and the past adjudication in the construction of the statute drew the line between actual sexual intercourse and any approximation, however near to it It is difficult to define any other. The subject has been recently considered in *State* v. *Brown,* 100 N. C., 519 ; that we are content, without comment, to refer to.

There is no error, and the judgment is affirmed.

No error. Affirmed.