ALTON D. IVIE v. D. F. KING AND T. J. BETTS.

(Filed 6 November, 1914.)

1. **Libel—Conspiracy to Defame—Professional Character—Actionable Per Se.**
   A publication in a newspaper of an article falsely charging an attorney at law and others with conspiracy to slander, is a charge of a criminal offense, and with reference to the attorney acting in his professional capacity, is actionable *per se*, and malice is implied.

2. **Libel—Actionable Per Se—Justification—Damages—Matters in Mitigation.**
   In an action for libel, the defendant may show the truth of his statements in defense, but not that they were made in reply to an attack upon him, as a justification, nor where the article complained of is libelous *per se* is the absence of malice a complete defense, though such matters may be urged in mitigation of a damages.

3. **Libel—Issues—Trials—Instructions.**
   In this action for libel proper issues having been submitted to the jury (*Hamilton v. Nance*, 159 N. C., 59), it is held that issues of good faith and absence of malice were unnecessary, the court having correctly charged the jury upon those matters under the issues submitted.

4. **Libel—Qualified Privilege—Justification.**
   The defendant in an action for libel is allowed to repel the libelous charge by denial or explanation; and he has a qualified privilege to reply to a charge in good faith, but his reply must be truthful, and not defamatory of his assailant.

5. **Libel—Conspiracy—Retraction as to Some—Trials—Evidence.**
   Where the defendant has published a libelous article as to several persons, charging a conspiracy, one of whom is the plaintiff, it is competent for the plaintiff in his action to show that a retraction had been filed as to the others, but not as to himself.

6. **Libel — Attorneys at Law — Speech to Jury—Evidence—Jurors as Witnesses—Justification.**
   Where an attorney at law brings an action for an alleged libelous article published in a newspaper by defendant, which charged a conspiracy by the plaintiff and others to defame the character, etc., of the defendant, and relates, among other things, to a speech the plaintiff has made in a certain action, to the jury, it is competent for the plaintiff to introduce in his behalf the jurors as witnesses to show the impression made on their minds by his speech.

7. Courts — Expression of Opinion — Predication Upon Findings — Libel — Trials—Instructions.

Where the trial judge predicates his statements in his charge upon what the jury may find the facts to be, it is not an expression of opinion forbidden by the statute; the jury may consider on the issue as to damages that the defendant had pleaded in defense the truth of the alleged libelous matters, should they find the plea untrue.

APPEAL by defendant from *Devin, J.,* at June Term, 1914, of ROCKINGHAM.

This is an action of libel upon the following article:

DEDICATED TO WOULD-BE CHARACTER ROBBERS.

One of the blackest crimes in the history of Rockingham County was attempted during the trial of the suit wherein The Leaksville-Spray Institute was plaintiff and B. F. Mebane defendant, when A. L. Brooks, C. O. McMichael, and A. D. Ivie, attorneys for the defendant, seemingly colluded together deliberately, premediately [meaning thereby premeditatedly] and with malicious intent for the purpose of going into the Temple of Justice and by falsehood, slander, vilification, misrepresentation, and inuendo, rob me of my good name and character; in an effort to advance the interest of their client. That their efforts resulted in a miserable failure does not lessen the crime, for it was by no fault of their own that they failed to accomplish their hellish purpose, but because I was too well and favorably known. The judge presiding, who has known me from childhood, knew they were lying, and the saddest part of it all is, they themselves knew and were bound to be conscious of the fact that they were lying..

I have been looking for the good that may be gotten out of this crime. It brings me face to face with an opportunity to glorify God and magnify His grace by forgiving these would-be character robbers; and this, by His help and grace, I will do. Already I have buried all purpose and desire for personal revenge. If only by pressing a button I could bring disaster upon them and their homes, and thus get personal revenge, I would not do it; but I feel the rather like saying, "Father, forgive them, for they know not what they do."

The Lord God, whose servant I am, requires me to forgive the sinner, but to hate and condemn his sin. Oh, the magnitude of the sin of the character-robber! Who can compute it? When one is robbed of his wealth, as a rule it is only a part of it, possibly his pocket change; but when you rob a man of his character, you take a priceless possession, and strike a blow at every member of his family—not only the innocent babe in the mother's arms, but children as yet unborn, even to the third and fourth generations.

No man has a right to sell himself to do wrong, and yet these men have sold themselves to commit this crime for the sake of the silver that was in it. This article is not a malicious attack upon them, but only an outburst of righteous indignation and a rebuke to such a crime.

The writers of both sacred and profane history agree that the character-robber is by far a worse man than the highway robber; and if any writer has made him a better man than the murderer, I have failed to discover it. The strong arm of the law and public sentiment have driven the highway robber from the land, but the little jackleg lawyer is still plying his trade in some places and will continue to do so until an awakened public conscience drives him out. If ever there was a day when such tactics were useful, that day has passed in Rockingham County. Her best citizens stand for truth, honor, and justice.

Now, if what I have written is not true, I have slandered these men; but if, on the other hand, it is true, I have rendered a public service by repudiating and exposing their methods. Let us hope that such a crime as this may never again be repeated in any of our courts of justice.

By some it has been thought a mark of great courage to stand in the Temple of Justice and abuse and slander one's neighbor; but it is the same kind of courage that displays itself when one takes the advantage and conceals himself by the roadside and shoots his neighbor from ambush. The right to practice law does not carry with it the right to abuse, vilify, slander, and lie. The legal profession has, in some instances, been degraded by a few who thought they could not earn their fee without resorting to such methods, but the higher class lawyer feels that he is entitled to his fee when he has rendered a clean, clear-cut service.

I do not believe that either of these men, who appeared for the defendant in this suit, will ever enjoy the fellowship of the Lord Jesus Christ (which is worth more than everything else) until they make public confession of this crime. Nor do I believe they can ever enjoy the esteem, respect, and confidence of their fellow countrymen to the extent they might have enjoyed it but for this crime.

Yours for Justice,<br>D. F. KING.

Verdict and judgment for plaintiff. Appeal by defendant.

*William P. Bynum, H. R. Scott, P. W. Glidewell, Thomas S. Beall, and Manly, Hendren & Womble for plaintiff.*

*A. W. Dunn and Manning & Kitchin for defendant.*

CLARK, C. J. This is an action for libel, in the publication of an article by D. F. King and T. J. Betts, owners and publishers of the

*Weekly Courier,* which charged that the plaintiff, together with A. L.
Brooks and C. O. McMichael, all attorneys at law, for money, entered
into a conspiracy to slander the defendant King, and unlawfully and
maliciously robbed him of his good name and character. The jury
found that the defendant Betts published a full and complete retraction
of said article within ten days from the service of notice which was
given under the statute, and the action was dismissed as to him. The
defendant King averred that the article was true as applied to plaintiff.

The jury, in response to the issues submitted, found that the charge
was not true, and assessed damages against the defendant King in the
sum of $1,500.

The article charges conspiracy to slander, which is a criminal offense,
and its references to plaintiff in relation to his profession as a lawyer
also make the charge actionable *per se,* and malice is implied. Newell
Libel and Slander, 168-185.

Exceptions 1 and 2 are because the court refused to submit an issue
whether the article was published by the defendant in self-defense and
whether it was published by him in good faith and without malice to
the plaintiff. Neither exception can be sustained. The defendant could
have proven the truth of his article, but it was not a defense that it was
in reply to an attack made upon him. Two wrongs do not make a right.
Nor could he show good faith and the absence of malice as a defense
for an article which is libelous *per se.* These are matters which could
be urged in mitigation of damages only (*Knott v. Burwell,* 96 N. C.,
272), and the defendant was allowed so to use them. They were, there-
fore, not matters requiring an issue. The issues in this case were in
accordance with the ruling in *Hamilton v. Nance,* 159 N. C., 59; *Fields
v. Bynum,* 156 N. C., 415; *Sowers v. Sowers,* 87 N. C., 303, and cases
cited by them.

The issues of self-defense and of good faith and absence of malice
were not necessary, for the court told the jury that before they could
assess punitive damages they must find that the defendant "was actuated
by express malice, ill-will; that the publication was made with design
and intent to injure the plaintiff, and that it was published in wanton
and reckless disregard of his rights."

Nor was he entitled to an issue as to self-defense. The law allows a
man to repel a libelous charge by a denial or an explanation. He has
a qualified privilege to answer the charge, but it must be truthful, and
not defamatory of his assailant. The rule is thus stated in 25 Cyc.,
391: "The law justifies a man in repelling a defamatory charge by a
denial or by an explanation. He has a qualified privilege to answer
the charge, and if he does so in good faith, and what he publishes is
fairly an answer, and is published for the purpose of repelling the

charge, and not with malice, it is privileged, although it be false. But the privilege under this rule is limited to retorts or answers which are necessary to the defense or fairly arise out of the charges made; and hence if the defamatory matter published by defendant is not a proper reply to the matter published by plaintiff which provoked its publication, it will be actionable irrespective of the question of malice."

Exceptions 3 and 4 as to the rulings upon testimony need not be considered. They were merely incidental matters as to which even if there was error it could not materially affect the result.

Exception 5: The evidence that the defendant filed a retraction as to the other parties denounced in the article as being in the conspiracy with Ivie was competent.

Exceptions 6, 7, 8, and 9, for the refusal to strike out the evidence of the witnesses who were jurors in the trial at which the speech of Ivie was made as to the impression on their minds of the nature of his speech cannot be sustained. This action is not upon that speech, but upon the article written by the defendant, and he cannot justify his libelous article by reason of the nature of the plaintiff's speech, for his article was libelous on its face. While the defendant could show in mitigation of damages that Ivie's speech was violent and provocative, it was competent for Ivie to show by these witnesses, who were jurors on that trial, the impression made on their minds that it was not violent and provocative. This applies also to exception 10, which was for a refusal to charge that if Ivie's speech was false they should answer the second issue in this trial that the charges made by the defendant were true.

Exception 11 is abandoned. Exception 12 is because the court refused to charge that the jury were restricted to actual damages, and could not allow the plaintiff punitive damages under the pleadings in this case. The complaint conforms in language to those in similar cases before this Court in which punitive damages have been allowed.

Exception 13 is for refusal to charge on the issue of self-defense, which the court properly declined to submit, and exception 14 is abandoned.

Exception 15 is upon the ground that the court expressed an opinion upon the facts; but an examination of the paragraph of the charge excepted to will show that the court based it upon the contingency that the jury had found by its response to the second issue that the statements and charges in the article were not true. In that contingency he told the jury that the plaintiff contended that in aggravation "they could consider that the defendant knew the character of Ivie, had lived in the same town; had been many years associated with him in business; knew his personal and professional character; knew the falsity of the charges he was making against him; that after having published so severe a

charge against him and having coupled his name with others, that thereafter he retracted as to another whose name was mentioned in the publication and permitted it to stand as to the plaintiff in this case, was evidence which you should consider." It is apparent by reading the context that this is a part of the statement of the plaintiff's contention, though, as printed, the paragraph stating the plaintiff's contention is divided off before this paragraph begins. The following paragraph states the defendant's contention. However, if this were not so, the judge was stating that if the jury should find that the charge was untrue, then these matters which were not contradicted were legitimately for consideration on the question of damages.

Exceptions 16 and 17 were to instruction that on the question of punitive damages the jury could consider, in aggravation of damages, that the defendant had pleaded justification in his answer and that he had failed to prove that the plaintiff was guilty of the matters which the defendant had charged in his answer. The court had already instructed the jury that punitive damages could not be awarded unless they found that the defendant was actuated by express malice. If that was so found, the court told them that in assessing the damages they could consider that the defendant, not content with the publication sued on, had answered, pleading its truth, thus making it a part of the permanent court records.

In this we think that there was no error, though there are cases in other states which limit the application of the principle by certain restrictions.

No error.